## THE ALVAH.

### MORRIS v. THE ALVAH.

(District Court, E. D. New York. February 2, 1894.)

1. SHIPPING — MARITIME CONTRACT — PRELIMINARY OR UNAUTHORIZED CONTRACT — CONFIRMATION.

   A contract binds the ship when it is confirmed by those who have authority, and the ship has actually entered upon the performance of it, although it may have been a contract preliminary to a maritime contract, or made by brokers acting without sufficient authority.

2. SAME — TRANSPORTATION OF CATTLE — WARRANTY OF SUFFICIENT VENTILATION — DAMAGES FOR FAILURE TO PROVIDE.

   In a contract for transportation of cattle, it is implied that the space allotted shall be sufficiently ventilated, and when the ship's brokers reported that the ship would insure, but insurance could not be effected on cattle placed in a certain portion of a ship without additional ventilation, which the shipmaster refused to provide, *held*, that the shipper was justified in not furnishing cattle to fill such portion of the ship, and the ship was liable for the failure to transport the cattle, provided for by contract, but shut out by the ship's refusal to provide further ventilation.

In Admiralty. Libel in rem for damages for failure to transport cattle. Decree for libelant.

Foster & Thomson, for libelant.
Convers & Kirlin, for claimants.

BENEDICT, District Judge. This is an action against the steamship Alvah to recover damages for a violation of a contract of affreightment. It appears that Brigham & Pillsbury, shipbrokers, claiming to act on behalf of the steamship Alvah, agreed with the libelant for the transportation of 374 head of cattle, in the steamship Alvah, from Boston to London. When the Alvah was ready to receive the cattle, the fittings for the transportation of the cattle were made, and a space for the transportation of 374 cattle arranged. Of this space a part, being the after part of No. 2 and No. 3 between decks, was declared by the agent of the insurers of the

cattle deficient in ventilation, and the master was required to provide certain additional ventilators. Some of the required ventilators he put in; others he refused to put in. Thereupon the shipper declined to allow his cattle to be placed in the parts of No. 2 and No. 3 between decks. The remainder of the space was sufficient for 332 head only. These were taken and transported to London, and the freight paid thereon. The libelant now seeks to recover damages sustained by reason of the nonshipment of 42 head of cattle, as was provided for in the contract. The amount of the damage is claimed to be about $2,000.

On behalf of the claimants, it is insisted that the contract made by Brigham & Pillsbury was not a maritime contract, but a contract preliminary to a maritime contract, and did not bind the ship; and, second, that it was made without authority. This point cannot avail, for the reason that the contract made by the brokers was afterwards confirmed by those who had authority to bind the ship, and the ship actually entered upon the performance of the contract by taking on board cattle under the contract. After the performance of the contract had begun, the ship became bound to its performance, and the libelant can recover in admiralty against the ship for a violation thereof.

The next ground of contention is that the evidence is that the master was ready and willing to take on board the number of cattle required by the contract, and the failure to transport the 42 head was owing to the refusal of the shipper to ship them. I think it cannot be doubted that, in a contract for the transportation of cattle, it is implied that the space to be allotted to the cattle for the voyage shall be sufficiently ventilated. If, therefore, the act of the insurance company in refusing to insure cattle placed in the after part of No. 2 and No. 3, without the additional ventilators, was justified by the facts, the shipper was not bound to ship more than 332 cattle, and can recover for the failure of the ship to transport the additional 42 head called for by the contract. The brokers reported that the ship would insure. This undoubtedly meant that 374 head of cattle, if carried in the space allotted by the ship for their transportation, could be insured. As the fact turned out, insurance could not be effected upon cattle placed in the after part of No. 2 and No. 3 between decks without additional ventilation, which the master refused to provide. This, I think, justified the shipper in refusing to ship more than 332 head of his cattle, and rendered the ship liable for the damages sustained by the shipper by reason of the nonshipment of the 42 head of cattle that were shut out by reason of the master's refusal to provide sufficient ventilators for the space allotted to the cattle.

The libelant must therefore have a decree, with an order of reference to ascertain the damages.